[Cite as *State v. Lowry*, 2025-Ohio-5017.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 24AP-668 |
| v. | : | (C.P.C. No. 22CR-3399) |
| Jack D. Lowry, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 4, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Mitchell Williams*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Jack D. Lowry, appeals the judgment of the Franklin County Court of Common Pleas convicting him of one count of burglary in violation of R.C. 2911.12, a felony of the second degree, and one count of theft from a person in a protected class in violation of R.C. 2913.02, a felony of the fourth degree. For the following reasons, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On August 1, 2022, Lowry was indicted on one count of aggravated robbery in violation of R.C. 2911.01 with a repeat violent offender specification, one count of burglary in violation of R.C. 2911.12, and one count of theft from a person in a protected class in violation of R.C. 2913.02.

{¶ 3} The incidents surrounding Lowry's conviction occurred on June 30, 2022. At trial, the court heard testimony from William Farol who lived on East Cooke Road in the Clintonville neighborhood, just south of Worthington. Farol testified that on June 30, 2022, shortly after 12:00 p.m., while he was not at home, Farol received two cell phone notifications from his motion-activated home security cameras. The notifications indicated that the home security camera at the front door was activated at 12:15 p.m., and then at 12:22 p.m. the back door camera was activated. Farol testified that the back door notification was unusual, so he immediately checked the video from the back door security camera on his phone. Farol stated that on the video he saw "[a] man coming to my back door looking up at the camera and then immediately turning around." (Sept. 17, 2024 Tr. at 54.) Farol testified that he had never seen the man before and that he was unfamiliar with the Saturn sedan that was parked in his driveway. Farol took a few screenshots of the camera footage and then asked his wife to make posts on Nextdoor, a neighborhood social networking website, while Farol called the Columbus Police Department.

{¶ 4} The trial court also heard testimony from Jennifer Reed. Reed testified that on June 30, 2022, around 1:15 p.m, Reed had returned to her home on West Dublin Granville Road in Worthington to find an unfamiliar maroon Saturn with numerous bumper stickers in her driveway. Reed stated that, while she was trying to "make sense" of the car and why it was in her driveway, "this man comes bounding out of my front door. He had a yellow bag of some sort over his right shoulder holding it with his right hand, and he was yelling as soon as he came out of the door. 'I want my money.' " (Sept. 17, 2024 Tr. at 80.) Reed said the man was very angry and approached her until they were face-to-face and continued yelling, "I want my money." *Id.* The man then attempted to grab Reed's cell phone from her hand. Reed stated that she saw the shadow of a knife blade against the man's t-shirt and therefore "pushed my hand as hard as I could open because I felt like if he had got my cell phone, he might leave. I am really concerned about that knife and what he is doing with that knife." (Sept. 17, 2024 Tr. at 87-88.) After the man took Reed's cell phone, he got into the maroon Saturn, backed out of Reed's driveway, and drove away. Reed then proceeded to a neighbor's home to call 911. When Reed spoke to the 911 dispatcher, she saw blood on her elbow and realized she had been cut by the man's knife at

some point. Reed testified that some of her property was missing, including her medications and the contents of several jewelry boxes.

{¶ 5}   Reed described the man as around 25 to 35 years old, with very short hair, and not clean shaven, with visible stubble on his face. She described his clothing as "baggy" and stated that he wore a light t-shirt and shorts and had wrap-around sunglasses. At the time of the incident, Reed told the police that the assailant did not have any tattoos.

{¶ 6}   Reed also testified that, after the incident, she spoke with her neighbor, Carrie Sparks. Sparks had found a post on the Nextdoor website regarding an apparent attempted break-in that had a picture of a man and a maroon car. Sparks showed Reed the photo of the man from the Nextdoor post, and Reed confirmed it looked like the same man that broke into her home. While Reed identified Lowry in court as the man who broke into her home, she did not correctly identify Lowry from a police photo array.

{¶ 7}   Sparks, Reed's neighbor on West Dublin Granville Road, also provided testimony at trial. Sparks stated that on June 30, 2022 she was at CVS getting tested for COVID-19 when she received a doorbell notification on her phone from Reed. Sparks attempted to text Reed that she was not at home. When Sparks arrived home, she noticed Worthington Police cars on her street and learned that Reed had been robbed. Sparks was able to obtain video from one of her neighbors that showed the Saturn sedan in Reed's driveway. She also looked on the Nextdoor website and found a post of suspicious activity at a home on East Cooke Road that also involved a maroon Saturn sedan. Sparks testified that the Saturn and the man in the Nextdoor post were similar to the description Reed had provided to her. Sparks shared the photo with Reed, who immediately identified the man in the post as the assailant.

{¶ 8}   The trial court also heard testimony from Detective Steven Luoma with the Worthington Police Department. Detective Luoma had responded to the scene at Reed's home and attempted to gather fingerprints and DNA evidence from her home. Detective Luoma stated that the police were unable to match that evidence to any known suspects. Detective Luoma also testified that Sparks had forwarded information from the Nextdoor post to him. Detective Luoma testified that Reed confirmed that the man in the Nextdoor post was the man who broke into her home. Detective Luoma was then able to use facial recognition software on the photo from the Nextdoor post which identified Lowry as a

possible suspect. Detective Luoma was also able to determine from a database that Lowry had pawned several pieces of jewelry on the day of the burglary. Detective Luoma testified that Reed confirmed that some of the jewelry that Lowry sold to the pawn shop was hers. From the facial recognition and the information obtained from the pawn shop, Detective Luoma determined that Lowry was the primary suspect.

{¶ 9} Detective Luoma stated that he, along with the Franklin County Sheriff's Office SWAT team, arrested Lowry and confiscated his cell phone. Detective Luoma then interviewed Lowry. Lowry, upon seeing the Nextdoor posting, claimed that he went to the house on East Cooke Road because that was his "weed man," which Detective Luoma interpreted to imply that was where Lowry obtained weed. Lowry also told Detective Luoma that he obtained the jewelry that he pawned from "Sasha" and "Polly" off Richardson Avenue but did not provide their last names. Detective Luoma testified that "at that point I felt I was being led astray by Mr. Lowry. This interview was going nowhere, and he was not giving me anything, so at that point the interview was concluded." (Sept. 17, 2024 Tr. at 211.) Detective Luoma also testified that the cellebrite analysis of Lowry's cell phone records corroborated Lowry as the suspect.

{¶ 10} Finally, the jury heard testimony from Seth Dodson, a Public Safety Intelligence Analyst with the Ohio State Highway Patrol, who performed cell phone mapping and location tracking on Lowry's phone. Dodson testified that Lowry's phone was traveling along East Cooke Road shortly after 12:00 p.m. and was also in the general vicinity of West Dublin Granville Road between noon and 1:00 p.m. on June 30, 2022. Dodson testified from his report that

> [b]eginning at approximately 12:06, the device begins to move west and then at approximately 12:15 the device begins to move northbound possibly via Interstate 71 or Indianola Avenue between the hours of 12:16 and 12:20. The device is likely in the general vicinity of 720 East Cooke Road where it eventually travels north. At approximately 12:43, the device in the general area of Morse Road and Indianola Avenue and Interstate 71. At approximately 12:56, the device is in the general vicinity of Interstate 71 and State Route 161, also known as East Dublin-Granville Road.

(Sept. 18, 2024 Tr. at 78.)

{¶ 11} On September 19, 2024, the jury reached a verdict finding Lowry not guilty of aggravated robbery in Count 1, guilty of burglary in Count 2, and guilty of theft in Count 3. The trial court sentenced Lowry to an indefinite term of seven to ten years and six months to be served at the Ohio Department of Rehabilitation and Correction.

{¶ 12} Lowry now appeals.

## II.  ASSIGNMENT OF ERROR

{¶ 13} Lowry argues the following assignment of error:

> The verdicts of guilt as to burglary and theft are against the manifest weight of the evidence.

## III.  ANALYSIS

{¶ 14} In his assignment of error, Lowry argues that his conviction was against the manifest weight of the evidence because Reed's identification of Lowry was inconsistent and because there was no physical evidence at the scene, such as fingerprints or DNA, that identifies him as the perpetrator.

{¶ 15} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 2010-Ohio-4738, ¶ 32 (10th Dist.), citing *State v. Thompkins*, 1997-Ohio-52, 78 Ohio St.3d 380, 387. We note that an appellate court reviewing a manifest weight challenge to a criminal conviction "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 2014-Ohio-2501, ¶ 22 (10th Dist.), citing *Thompkins* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for the most "exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *State v. Cervantes*, 2019-Ohio-1373, ¶ 27 (10th Dist.).

{¶ 16} We do not find this to be such an exceptional case where the trier of fact clearly lost its way, nor does the evidence weigh heavily against Lowry's conviction. Lowry argues that Reed's identification of him was not credible. We note that a reviewing court

may consider witness credibility in addressing a manifest weight of the evidence argument. *State v. Cattledge*, 2010-Ohio-4953, ¶ 6 (10th Dist.). However, in conducting such review, we are guided by the presumption that the jury " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Therefore, we must defer to the factual findings of the jury regarding the credibility of the witnesses. *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Lowry argues that Reed was not credible, as she did not identify Lowry from a photo array, she incorrectly estimated his age as much younger than he actually is, and she said to the police her assailant did not have tattoos despite Lowry having visible tattoos in court and in the Nextdoor post. However, Reed did identify Lowry in court and in the Nextdoor post, shortly after the incident on June 30, 2022.

{¶ 17} Lowry also takes issue with the lack of physical evidence, namely DNA or fingerprints, that would tie him to Reed's home. This court has noted that " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *State v. Connally*, 2016-Ohio-7573, ¶ 43 (10th Dist.), quoting *State v. Peeples*, 2014-Ohio-4064, ¶ 21 (10th Dist.), citing *State v. Conner*, 2013-Ohio-2773, ¶ 12 (10th Dist.). " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence.' " (Internal quotations omitted.) *Connally* at ¶ 43, quoting *Peeples* at ¶ 21. Further, " '[t]he testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction.' " *State v. Barrie*, 2016-Ohio-5640, ¶ 21 (10th Dist.), quoting *State v. Booker*, 2015-Ohio-5118, ¶ 18.

{¶ 18} Even given Reed's inconsistent identification of Lowry, a defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, *see* [*State v.*] *DeHass*, 10 Ohio St.2d 230 (1967), such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens,* 1996 Ohio App. LEXIS

2245, *7 (10th Dist. May 28, 1996). A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 19} While Lowry points us to inconsistencies from Reed's identifications of Lowry and her failure to identify him from the police photo array, we are not persuaded that the jury lost its way. Besides Reed's testimony, the jury also had evidence in the record that showed Lowry's cell phone location around West Dublin Granville Road and East Cooke Road at the time of the incidents. The state also presented evidence that Lowry had sold Reed's jewelry to a pawn shop within hours of it being stolen. While Reed did not identify Lowry from the photo array, she did identify him from the Nextdoor post. The jury was able to weigh all of this evidence, and this court has noted that "[a] conviction is not against the manifest weight of the evidence because the jury chose to believe the state's version of events over the defendant's version." *State v. Hawk*, 2013-Ohio-5794, ¶ 59 (10th Dist.).

{¶ 20} For these reasons, we overrule Lowry's assignment of error.

## IV. CONCLUSION

{¶ 21} Having overruled Lowry's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and DINGUS, J., concur.

_____